IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FORD MOTOR COMPANY-UAW RETIREMENT PLAN, | ) ) ) | CASE NO.  1:09 CV 477 |
| Plaintiff, | ) ) | JUDGE NUGENT |
| v. | ) ) ) | MAGISTRATE JUDGE McHARGH |
| ANDRIENNE WHEATLEY, et al., | ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) ) | |

        This case is before the Magistrate Judge pursuant to Local Rule.  Before the court is

Defendant Andrienne D. Wheatley's[1] motion for summary judgment and Defendant Bessie Horn's

motion for dismissal and the appointment of counsel.  For the reasons explained below, the

Magistrate Judge recommends that both motions be DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

        This case arises out of competing claims for survivor's benefits between two women, each

of whom claims to be the surviving spouse of John Wideman, Jr., a deceased former employee of

Ford Motor Company.  *See generally* doc. 1, Complaint, [hereinafter, "Compl."].  Mr. Wideman

retired from Ford effective March 1, 1995, at which point he began to receive certain pension

benefits as a result of his participation in the Ford Motor Company UAW Retirement Plan (the

_____

        [1]Defendant Wheatley's first name is spelled both as "Andrienne" and as "Adrienne" in
various court documents; the court uses "Andrienne" because that spelling still appears in the
caption.

"Plan").  (Compl., at ¶ 9; doc. 6, Defendant Wheatley's answer [hereinafter, "Wheatley Ans."], at ¶ 6; doc. 28, Defendant Horn's Answer [hereinafter, "Horn Ans."], at ¶ 6).  The Plan states that "unless rejected by the participant under the Plan's procedures, the Plan will pay survivor benefits to the spouse to whom the participant was married at the time of retirement."  Mr. Wideman was deemed under the Plan's terms to have elected survivor's benefits.  *See* Compl., at ¶ 10.[2]

Mr. Wideman identified Defendant Wheatley as his spouse upon retirement.  (Compl., at ¶ 12).  Mr. Wideman died in Cuyahoga County, Ohio on or about February 4, 2000.  (Compl., at ¶ 11; Wheatley Ans., at ¶ 6; Horn Ans., at ¶ 8). At the time of Mr. Wideman's death, Defendant Wheatley was still identified as Mr. Wideman's surviving spouse in the Plan documents.  (Compl., at ¶ 12). The Plan then began making payments of approximately $587.27 per month to Defendant Wheatley, effective March 1, 2000.  (Compl., at ¶ 14).

The Plan states that, on or about October 25, 2005, it received correspondence from Defendant Horn claiming Mr. Wideman's surviving spouse benefits.  (Compl., at ¶ 15).  Based on the court order indicating that Defendant Horn is Mr. Wideman's widow, the Plan determined that Defendant Horn was entitled to receive Mr. Wideman's surviving spouse benefits.  (Compl., at ¶ 16). On December 16, 2005, the Plan informed Defendant Wheatley that it could no longer pay her any surviving spouse benefits.  (Compl., at ¶ 16).  On or about February 1, 2006, the Plan began paying Defendant Horn monthly payments in the amount of $676.69.  (Compl., at ¶ 17).  Many of the facts

---

[2]The Plan states that Mr. Wideman was deemed under its terms "to have elected a joint and 60% survivor annuity in the form of a monthly annuity commencing at Mr. Wideman's death, and continuing for her remaining lifetime." (Compl., at ¶ 10).  Defendant Wheatley denies this assertion in her answer; however, it appears that none of the parties disputes that Mr. Wideman was deemed under the Plan's terms to have elected survivor's benefits of *some* kind. The type and amount is not at issue here; thus, it suffices to state that Mr. Wideman elected survivor's benefits.

surrounding the parties alleged marriages to Mr. Wideman are in dispute; thus the court will address those alleged facts as they become relevant to its analysis.

Defendant Wheatley filed a motion for summary judgment on December 14, 2009. (Doc. 39). On February 9, 2010, the court issued an order to show cause indicating that no responses to the motion for summary judgment had been filed as of that date and that the court would begin review of Defendant Wheatley's motion for summary judgment "without opposition unless an opposition, accompanied by a statement demonstrating good cause justifying the delayed filing, is received by no later than February 16, 2010." (Doc. 46).  Defendant Horn did not respond by filing, pursuant to the language of the court's order, "an opposition accompanied by a statement showing good cause;" however, on February 16, 2010, Defendant Horn filed a motion for dismissal and motion for appointment of counsel.  (Doc. 47).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing the absence of any such genuine issues of material facts; specifically

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party

pursuant to Federal Rule of Civil Procedure 56(e), which states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. See *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). The court also must determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson*, 447 U.S. at 249. In reaching such a determination, however, the court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. *Id.* at 248-49. Moreover, the "trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Circuit 1988).

The Supreme Court has held "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III. LAW AND ANALYSIS

### A. Defendant Horn's Filing

In her filing, Defendant Horn appears to seek a number of remedies. First, Defendant Horn argues that the case should be dismissed because the statute of limitations under 29 U.S.C.A. § 1113

has passed.  This portion of Defendant Horn's filing also claims that the Plan "was aware all along

that I was the legal spouse," and seeks damages from the Plan "in excess of $150,000."  (Doc. 47).

Second, Defendant Horn asserts a counterclaim against Defendant Wheatley seeking damages in

excess of $5,000,000, for – the court gleans – lying, being aware of Defendant Horn's lawful

common law marriage to Mr. Wideman, and/or for entering into an illegal, bigamous marriage with

Mr. Wideman.  Third, Defendant Horn states the following:

> My first husband died David Horn in 1965 making me free to complete the common
> law marriage to John Wideman.
>
> I married Jonas Calhoun in 1977 it was annulled because I was married to Wideman
> and Calhoun also had a past wife.

(Doc. 47).  Finally, Defendant Horn requests that the court appoint counsel for her if the case cannot

be resolved.  Defendant Horn's motion references repeatedly a letter she filed previously with the

court on either August 8, 2008 or August 8, 2009.[3]

### 1. Statute of Limitations

The court finds that the statute of limitations set forth at 29 U.S.C. § 1113 is inapplicable to

the case at bar.  Section 1113 provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's
> breach of any responsibility, duty, or obligation under this part, or with respect to a
> violation of this part, after the earlier of --
>
> (1)    six years after (A) the date of the last action which constituted a part of the
> breach or violation, or (B) in the case of an omission the latest date on which
> the fiduciary could have cured the breach or violation, or
>
> (2)    three years after the earliest date on which the plaintiff had actual knowledge
> of the breach or violation;

---

[3]The court presumes that the letter to which Defendant Horn refers is the one she filed on
August 4, 2009, as no letter was filed with the court on either August 8, 2008 or August 8, 2009.

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

This section of ERISA limits the time when a beneficiary may commence a claim against a plan fiduciary for breach of duty. Defendant Horn invokes this provision, presumably against the Plan, as grounds for the dismissal of the case. However, the Plan brought this action in interpleader for purposes of determining the proper beneficiary of survivor's benefits; thus, Section 1113 is inapplicable and cannot operate to bar the Plan's interpleader claim.

### 2. Claims Against the Plan and Defendant Wheatley

Defendant Horn also seeks damages from the Plan "in excess of $150,000" on the basis that the Plan "was aware all along that [she] was the legal spouse," and asserts a counterclaim against Defendant Wheatley seeking damages in excess of $5,000,000. (Doc. 47). These claims are untimely, as Defendant Horn did not assert them in her answer and the deadline for amending the pleadings has long since passed. The fact that Defendant Horn has proceeded without counsel throughout most of this case does not alter her duty to adhere to court deadlines, especially in light of the court's repeated reminders regarding the same. *See McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980 (1993) (stating that federal courts "have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *cf. Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (stating that the plaintiff's case "was not dismissed as the result of inartful pleading or any lack of legal training, but rather because he failed to adhere to readily comprehended court deadlines of which he was well-aware"). Moreover, even if the court were to consider Defendant Horn's claims against the Plan and Defendant Wheatley, the merit of these claims – particularly those against the Plan – depends in large part on whether Defendant Horn is Mr. Wideman's surviving spouse. Thus, the Court must

address this central issue before it may address Defendant Horn's claims against the other parties.

### 3.  Appointment of Counsel

Defendant Horn also requests that the court appoint counsel for her "if this case cannot be resolved." (Doc. 47).  The court finds the precise nature of this request to be somewhat unclear but finds that any request for appointment of counsel at this juncture should be denied.  The court previously appointed counsel for Defendant Horn on September 21, 2009, and counsel withdrew less than two months later.  *See* doc. 22, order appointing counsel; doc. 31, order granting doc. 30, motion to withdraw.  Although a criminal defendant has a Constitutional right to representation, there is no similar right to counsel in civil litigation, even if the pro se litigant is a defendant.  *See* Northern District of Ohio Local Civil Rule 83.10 ("*Assignment of counsel is not a right of a pro se litigant* but may be utilized in those limited cases where the judicial officer believes such an assignment is warranted.").  Based on the previously unsuccessful attempt to provide counsel for Defendant Horn, the court has every reason to believe that any attempt to perform this service for Defendant Horn a second time likely would be fruitless and therefore unwarranted.  Accordingly, this portion of Defendant Horn's "motion" should be denied.

### 4.  Remaining Issues

The remainder of Defendant Horn's filing addresses the merits of this case.  Although Defendant Horn does not label any portion of her filing as an "opposition," the court will consider her assertions as they relate to the complaint and Defendant Wheatley's motion for summary judgment. *See e.g., Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (A document filed pro se is to be "liberally construed").  Defendant Horn also references in her filing the letter she filed with the court on August 4, 2009.  *See* doc. 47, 17.  The court notes that the assertions contained in

this letter are more or less identical to those contained in Defendant Horn's pending motion.  Thus, the court need not consider this document separately, although it will consider the evidence that Defendant Horn has submitted with this letter as well as that submitted along with her various other filings to the extent that such evidence may support any opposition to Defendant Wheatley's motion for summary judgment.

## B.  Defendant Wheatley's Motion for Summary Judgment

The court now turns to Defendant Wheatley's motion for summary judgment.  Defendant Wheatley argues that the court should grant judgment in her favor because she is Mr. Wideman's surviving spouse.  Defendant Horn appears to argue in her motion that Defendant Wheatley's marriage to Mr. Wideman was not valid because Mr. Wideman and Defendant Horn had a valid common law marriage that did not end prior to Defendant Wheatley's alleged marriage to the deceased.

### 1.  Sumter County Court Orders

Although the parties do not brief the issue directly, the court first must address whether principles of full faith and credit require this court to find that Defendant Horn is Mr. Wideman's surviving spouse.  In the complaint, the Plan states that it stopped paying benefits to Defendant Wheatley and began paying benefits to Defendant Horn when Defendant Horn submitted to the Plan a copy of an order from the probate court of Sumter County, Alabama granting letters of administration in the estate of Mr. Wideman.  (Compl., at ¶¶ 15-17).  This order, dated October 26, 2005, indicates "that Bessie Horn is the widow of John Wideman, Jr. and was his widow on the date of February 4, 2000 when he died."  (Doc. 39, Ex. 11, at 1).  Defendant Horn also has submitted an order from the circuit court of Sumter County, Alabama, in which the court denied the petitioner

Adrienne Wideman's request to vacate the order of the Sumter County probate court. (Doc. 13, at

2).  According to Defendant Wheatley, the Sumter County probate court order "was fraudulently

obtained by Gerald Horn, the son of the Defendant Horn and submitted to the Plaintiff by the

Defendant Horn," and " [i]t was this Order that formed the sole basis of the Plaintiff paying the

Defendant Horn." (Doc. 39, at 10).  Although she does not specifically so state, the court presumes

that Defendant Wheatley asserts these claims in support of an argument that this court should not

defer to the Sumter County court orders in deciding which defendant is Mr. Wideman's surviving

spouse.

Ordinarily, the judicial proceedings of a sister state are entitled under the United States

Constitution to full faith and credit in the courts of any other state.  Art. IV, § 1 ("Full Faith and

Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every

other State . . . .").  This principle is codified at 28 U.S.C. § 1738, which provides in relevant part,

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall
> have the same full faith and credit in every court within the United States and its
> Territories and Possessions as they have by law or usage in the courts of such State,
> Territory or Possession from which they are taken.

Under Alabama Code § 12-13-1(b)(2) and (c), probate courts in Alabama have jurisdiction

over the granting and revocation of letters of administration, and "[a]ll orders, judgments, and

decrees of probate courts shall be accorded the same validity and presumptions which are accorded

to judgments and orders of other courts of general jurisdiction."  Pursuant to these principles, the

Sumter County court orders normally would be entitled to the same deference in Ohio as they would

be in Alabama.

The Supreme Court has interpreted the full faith and credit obligation broadly with regard

to judgments.  It has stated,

> [a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.  For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force.

*Baker ex rel. Thomas v. General Motors Corp.*, 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998).  Furthermore,

> [u]nder res judicata [or claim preclusion], a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  Under collateral estoppel [or issue preclusion], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

*San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336 n. 16, 125 S.Ct. 2491, 2500, 162 L.Ed.2d 315 (2005) (internal punctuation and citation omitted).

The extent to which an order granting letters of administration constitutes a final judgment for purposes of full faith and credit is not entirely clear, as the order must be revoked under certain circumstances.  Alabama Code § 43-2-29(a) provides:

> If, after letters of administration have been granted as in case of intestacy, any will is proved and the executor therein named appears, claims letters testamentary and complies with the requisition of the law, the probate court having jurisdiction must revoke the letters of administration and grant letters testamentary to such executor.

Thus, in *Gross v. Slye*, 360 So.2d 333 (Ala. 1978), the Supreme Court of Alabama held that, under § 43-2-29(a), a will found within five years of the death of the testator must be admitted to probate, even though the estate had already been administered and a final settlement issued in accordance with the probate laws.  The appellees argued in that case that the final settlement of the estate constituted a "'a final judgment' whose validity was not timely attacked in a direct attack through [Alabama Rule of Civil Procedure] 60(b)" and that the judgment could not at that point be collaterally attacked.  *Id.*  In rejecting these arguments, the court noted that the proceeding at issue

was not a collateral attack because it was specifically provided for in § 43-2-29(a).  The court further

noted that Rule 60(b), which provides relief from "a final judgment, order, or proceeding," was

inapplicable to the case.  *Gross* and § 43-2-29(a) therefore suggest that an order granting letters of

administration may not constitute a 'final judgment,' at least insofar matters involving the probate

of a particular estate are concerned.

However, an order of an Alabama probate court, including one granting letters of

administration, ordinarily is not subject to collateral attack in another proceeding.  *See Meriwether

v. Reynolds*, 289 Ala. 361, 364, 267 So.2d 434, 436 (1972) ("Since the Probate Court is one of

general jurisdiction in the granting of letters of administration, all intendments are indulged in favor

of the validity of its appointment.  Unless the record shows on its face a want of jurisdiction the

presumption arises that the court concerned has asecertained all facts essential to the appointment,

and the order granting letters can not be collaterally assailed).

Defendant Wheatley argues that this court should not honor the determinations of the Sumter

County probate court because the order was obtained by fraud.  This argument is in the nature of a

collateral attack.  A "collateral attack" is "an attempt to defeat the operation of a judgment, in a

proceeding where some new right derived from or through the judgment is involved."  *Ohio Pyro,

Inc., v. Ohio Dep't of Commerce, Division of State Fire Marshal*, 115 Ohio St.3d 375, 378, 875

N.E.2d 550 (Ohio 2007).  The difference between a "direct" and a "collateral" attack, is as follows:

> any proceeding provided by law for the purpose of avoiding or correcting a judgment
> is a direct attack, which will be successful upon showing error; while an attempt to
> do the same thing any other proceeding is a collateral attack, which will be successful
> only upon a showing of want of power.

*Gross*, 360 So.2d at 335 (internal punctuation and citations omitted).  "The objective of a collateral

attack is to modify a previous judgment because it is allegedly ineffective or flawed for some

reason." *Ohio Pyro*, 115 OhioSt. at 379, 875 N.E.2d 550.

Collateral attacks generally are disfavored in Ohio, and sister-state judgments have a strong presumption of validity. However, the "judgment of a sister state's court is subject to collateral attack in Ohio if there was no subject matter or personal jurisdiction to render the judgment under the sister state's internal law, and under that law the judgment is void." *Litsinger Sign Co. v. American Sign Co.*, 11 Ohio St.2d 1, 4, 227 N.E.2d 609, 613 (Ohio 1967). Ohio courts also have held that where the judgment of a sister state is obtained through fraud, the 'full faith and credit' clause does not apply. *Schwartz v. Schwartz*, 113 Ohio App. 275, 173 N.E.2d 393 (Ohio App. 1960); *cf. Trimax Holdings, Inc. v. Larson*, 1998 WL 353873 at *2 (Ohio App. 10th Dist. Jun. 30, 1998) (citing *Schwartz* for the notion that "a foreign judgment procured through fraudulent evidence is subject to collateral attack," but finding no evidence that the foreign judgment in that case was obtained by fraud); 63 Ohio Jur. 3d Judgments § 397 ("A judgment obtained by fraud or collusion may not as a rule be used as a basis for the application for the doctrine of res judicata, provided the fraud is 'extrinsic,' that is, such that it deprived the party against whom res judicata is sought to be asserted of the opportunity to appear and litigate his or her case."). However, "[a] foreign judgment may not be collaterally attacked upon the mere assertion of the party that the judgment was erroneous in law or in fact." *Samyang Food Co., Ltd. v. Pneumatic Scale Corp.*, 2005 WL 2711526, at *5 (N.D. Ohio Oct. 21, 2005) (citing *Clarkson Co. v. Shaheen*, 544 F.2d 624, 631 (2d Cir, 1976)). Rather, "[c]lear and convincing evidence of fraud is required in order successfully to attack a foreign judgment, just as such proof is necessary before a court will set aside its own judgment." *Id.*

The Ohio Supreme Court has held that the doctrine disfavoring collateral attacks except in situations where the court lacked jurisdiction or the judgment was procured by fraud "functions

independently of res judicata principles." *Ohio Pyro*, 115 OhioSt. at 382, 875 N.E.2d 550.

"Although res judicata principles apply only to parties and those in privity with them, the collateral-attack doctrine applies to both parties and nonparties." *Id.* Thus, although neither party addresses the application of res judicata principles here, it appears that the collateral attack doctrine applies without regard to considerations of res judicata.

In support of her claim that Gerald Horn fraudulently obtained the Sumter County probate court order on behalf of Defendant Horn, Defendant Wheatley argues that Gerald Horn made the following false statements to the probate court:

1.     Gerald Horn was Mr. Wideman's adult son;

2.     Mr. Wideman was a resident of Sumter County when he died.

3.     Mr. Wideman owned assets and personal property in Sumter County when he died, the value of which was $5,000.

4.     Mr. Wideman died intestate.

(Doc. 39, at 10).  Defendant Wheatley also claims that she never received notice that the petition was filed in the Alabama court and that "[t]his was a deliberate attempt by Gerald Horn on the Defendant Horn's behalf to circumvent the laws and jurisdiction of the State of Ohio to prejudice the legal rights of Adrienne Wheatley."[4] (Doc. 39, at 10).  Defendant Wheatley does not specifically argue that Gerald Horn's representation that Defendant Horn is Mr. Wideman's widow amounts to a false

---

[4]Although it well may be that Defendant Wheatley did not receive notice of the Sumter County probate action at the time that the petition was filed, the court is suspicious of Defendant Wheatley's claim that she *never* received notice, as the record contains evidence to the contrary. Specifically, the order of the Sumter County circuit court reflects that Defendant Wheatley moved to vacate the order of the Sumter County probate court, and that her request was denied. Obviously, if Defendant Wheatley appeared in the circuit court action to vacate the judgment of the probate court, she was aware of the proceedings in the probate court.

statement.  *See* doc. 39, Ex. 10, Ex. 11.

In support of her claim that statement number (1) is false, Defendant Wheatley submits evidence that suggesting that Defendant Horn was married to David Horn when Gerald Horn was born. (Doc. 39, Ex. 8).  This evidence consists of a form Defendant Horn appears to have completed and submitted to the Plan on or about September 2, 2001 in support of her claim that she is Mr. Wideman's surviving spouse.   The form indicates that Defendant Horn and Mr. Wideman began living together as husband and wife in July 1965, that Defendant Horn was married to David Horn from June 1959 until his death in July 1965, and that Gerald Horn was born on March 18, 1963. (Doc. 39, Ex. 8).

In support of her claims that statement numbers (2) and (3), above, amount to false statements, Defendant Wheatley submits an affidavit in which she swears that, at the time of his death, Mr. Wideman was a resident of Ohio and did not own any assets or personal property in Alabama.  (Doc. 39, Ex. 1, at ¶¶ 9-10).  Defendant Wheatley also submits, in support of her claims that statement numbers (2) and (4) are false, a document entitled "Last Will and Testament of John Wideman, Jr." and a certificate of death.  (Doc. 39, Ex. 7; Ex. 13).  The will contains what appears to be Mr. Wideman's signature, as well as the signatures of two witnesses.  (Doc. 39, Ex. 7, at 6). The will is dated February 24, 1998 and indicates that Mr. Wideman was a resident of 663 Deer Court, Bedford Heights, Ohio at that time.  (Doc. 39, Ex. 7, 1).  Interestingly, the will also purports to devise certain real property located in Alabama to Darneetha Moore and Adrienne Wideman, who are listed as Mr. Wideman's daughter and spouse, respectively. The certificate of death also lists 663 Deer Court, Bedford Heights, Ohio as Mr. Wideman's residence.

Defendant Wheatley does not argue directly that the Sumter County probate court lacked

power to issue orders concerning Mr. Wideman's estate.  However, the court notes that such an argument to some extent would be related to Defendant Wheatley's argument that this court should disregard the Sumter County probate court order because its authority was fraudulently invoked.

Alabama Code 1975 § 43-2-40 provides regarding the authority of probate courts to grant letters of administration: "Courts of probate, within their respective counties, have authority to grant letters of administration on the estates of persons dying intestate, as follows:

  (1)    Where the intestate, at the time of his death, was an inhabitant of the county.

  (2)    Where the intestate, not being an inhabitant of the state, dies in the county, leaving assets therein.

  (3)    Where the intestate, not being an inhabitant of the state, dies out of the county, leaving assets therein.

  (4)    Where the intestate, not being an inhabitant of the state, dies, leaving no assets therein, and assets are afterwards brought into the county.

  (5)    Where the intestate, being an inhabitant of the state, dies, leaving no assets subject to administration in the county of his residence, and no administration has been granted in such county within three months after the death of the intestate, then administration may be granted in any county where the intestate leaves assets.

Much of the evidence Defendant Wheatley presents in attempting to show that the probate court order was obtained by fraud concerns Mr. Wideman's residence and whether Mr. Wideman owned property in Sumter County.  These matters are to some extent as relevant to the probate court's jurisdiction as to whether the order was procured by fraud because they concern the authority of the probate court to grant the letters of administration in the first place.  Thus, the matter of whether or not the order was obtained by fraud and the matter of the court's authority over Mr. Wideman's estate are somewhat co-extensive.

Defendant Wheatley's arguments do seem, therefore, to address those limited situations in

which the order of another court may be collaterally attacked.  However, they ultimately miss the mark.  For instance, Defendant Wheatley points to a form that Defendant Horn completed and submitted to the Plan for purposes of showing that Gerald Horn falsely represented to the Sumter County probate court that he was Mr. Wideman's son.  As noted above, this form indicates that Defendant Horn and Mr. Wideman began living together as husband and wife in July 1965, that Defendant Horn was married to David Horn from June 1959 until his death in July 1965, and that Gerald Horn was born on March 18, 1963.  (Doc. 39, Ex. 8).  Under Ohio Revised Code § 3111.03(A)(1), there is a presumption that a man is a child's natural father if the man and the child's mother are or have been married to each other, and the child is born during the marriage.  Because the form indicates that Defendant Horn was married to David Horn when Gerald Horn was born, under § 3111.03(A)(1), there is a presumption that Gerald Horn was not Mr. Wideman's son.  The presumption may be rebutted only by the types of evidence enumerated in the statute, none of which have been presented here.  Thus, Defendant Wheatley' evidence may show, clearly and convincingly, that Gerald Horn is not Mr. Wideman's son.  However, it does not necessarily show that Gerald Horn fraudulently represented that fact to the probate court, as Gerald Horn may have believed that he was Mr. Wideman's son.[5]  Defendant Wheatley has presented no evidence of Gerald Horn's scienter; without that, the court cannot determine whether he made statements in order to fraudulently invoke the authority of the court.

Defendant Wheatley's argument regarding Mr. Wideman's alleged will fail for similar reasons.  As described above, Defendant Wheatley points to this document in support of her claims

---

[5]Interestingly, Mr Wideman lists "Jerry Horne" as a child from a previous relationship in the alleged will.  Perhaps this is some evidence that Mr. Wideman also believed Gerald Horn to be his son.

that Gerald Horn made various false statements to the Sumter County probate court.   The court notes, as an initial matter, that the alleged will does not provide airtight support even for these claims.  For instance, although the portion of the alleged will listing Mr. Wideman's Bedford Heights address may tend to support Defendant Wheatley's claim that Mr. Wideman did not die a resident of Sumter County, another portion of the will tends to negate her assertion that Mr. Wideman did not own any property in Alabama when he died.  *See* doc. 39, Ex. 13.  In Article V of the will, Mr. Wideman purportedly devises certain real property located in Alabama to his daughter and his spouse.  (Doc. 39, Ex. 13).  Though certainly this portion of the will cannot establish that Mr. Wideman actually owned property in Alabama, it suggests that Mr. Wideman believed he owned property in Alabama, and it does not aid Defendant Wheatley's claims that Mr. Wideman did not. The only evidence that Defendant Wheatley presents in support of her claim that Mr. Wideman did not own property in Alabama is her affidavit.  In essence, this pits Defendant Wheatley's sworn word against the determinations contained in a court order.  "A foreign judgment may not be collaterally attacked upon the mere assertion of the party that the judgment was erroneous in law or in fact . . . . Clear and convincing evidence of fraud is required in order successfully to attack a foreign judgment, just as such proof is necessary before a court will set aside its own judgment."  *Samyang Food*, 2005 WL 2711526, at \*5 (internal citations omitted).  Moreover, whether or not Mr. Wideman actually owned property in Alabama does not necessarily answer the central question – i.e., whether Gerald Horn's representations to the probate court as to that fact were fraudulent.[6]  Again, without

---

[6]Incidentally, whether Mr. Wideman owned property in Alabama also may be relevant to whether the Sumter County probate court had the authority to grant the letters of administration – assuming the property was located in Sumter County – even if it is otherwise true that Mr. Wideman died a resident of Ohio.  *See* Alabama Code 1975 § 43-2-40 ("Courts of probate, within their respective counties, have authority to grant letters of administration on the estates of

evidence of scienter, the court cannot determine whether Gerald Horn deliberately made false statements in order to fraudulently invoke the authority of the court

Since Defendant Wheatley's motion for summary judgment is before the court, it is Defendant Wheatley's burden to show that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law on this issue. Ultimately, the evidence that Defendant Wheatley presents does not meet her burden to clearly and convincingly demonstrate that the Sumter County orders were obtained by fraud or that the court lacked authority over Mr. Wideman's estate. Accordingly, the court finds that Defendant Wheatley has failed to meet her burden with respect to this issue. Thus, this court must defer to the Sumter County court orders – as well as the determination of the Sumter County probate court that Defendant Horn is Mr. Wideman's surviving spouse – at this juncture.[7]

---

persons dying intestate, as follows . . . (2) Where the intestate, not being an inhabitant of the state, dies in the county, leaving assets therein."). As noted above, however, Defendant Wheatley does not directly challenge the jurisdiction of the Sumter County probate court.

[7]Although Defendant Wheatley may protest that the determinations of the Sumter County probate court are in error, the merits of that argument cannot be decided here. The mere existence of error is not enough for this court to set aside the order of another court upon a collateral attack. *See Ohio Pyro*, 115 Ohio St.3d at 380, 875 N.E.2d 550 (stating that because a collateral attack is "an attack on the integrity of the judgment[, t]he merits of the previous judgment are not at issue in such a situation"). Rather, the proper vehicle for attempting to set aside an order based on an error of law or fact generally is by way of a direct attack, such as an appeal. *See id.* ("[S]ubject to only rare exceptions, direct attacks, i.e., appeals, by parties to the litigation, are the primary way that a civil judgment is challenged."). It appears from the evidence that Defendant Wheatley attempted in the Sumter County circuit court to vacate the order of the probate court and that her request was denied. Although the basis of the circuit court's refusal to grant Defendant Wheatley's request is not apparent from the face of the order, it is possible that the circuit court viewed her attempt in that case as a collateral attack. *See Franks v. Norfolk Southern Ry. Co.*, 679 So.2d 214 (Ala. 1996) (holding that a motion to dismiss filed in a wrongful death case that sought to vacate an order of the probate court constituted an improper collateral attack, as it was not a filed as a motion in the probate court or in the circuit court as an appeal from the probate court order). Regardless, the fact that Defendant elsewhere tried and

Assuming, however, that the Sumter County court orders, and the determinations contained therein, are not entitled to full faith and credit, the court addresses below the remaining arguments in Defendant Wheatley's motion for summary judgment.

## 2. Admissions

Next, Defendant Wheatley argues she is entitled to summary judgment under Federal Rule of Civil Procedure 36(A) because of Defendant Horn's failure to respond to various requests for admissions. Specifically, Defendant Wheatley argues that by failing to respond to these requests, Defendant Horn admitted the following:

1. Adrienne D. Wheatley and John Wideman Jr. Were lawfully and legally married on August 16, 1990 in Cleveland, Ohio.

2. Bessie Horn was legally and lawfully married to David Horn in 1959.

3. Bessie Horn was legally and lawfully married to Robert Jones in 1974.

4. Bessie Horn was never legally and lawfully married to John Wideman Jr.

5. Bessie Horn cannot produce a single piece of evidence to support her claim that she and John Wideman Jr. Were ever legally and lawfully marries.

---

failed to vacate the order of the probate court provides further reason for this court to deny Defendant Wheatley's attempt to collaterally attack the order here.

Furthermore, it appears that Defendant Wheatley may not have exhausted all of her potential remedies in the Sumter county probate court. As noted above, Alabama Code § 43-2-29(a) provides:

> If, after letters of administration have been granted as in case of intestacy, any will is proved and the executor therein named appears, claims letters testamentary and complies with the requisition of the law, the probate court having jurisdiction must revoke the letters of administration and grant letters testamentary to such executor.

Defendant Wheatley claims that Mr. Wideman did not die intestate, as indicated in the Sumter County probate court, but rather, that he left a will naming his spouse as executor. (Doc. 39, at 3; Ex. 12, 13). There is no evidence before this court that Defendant Wheatley ever attempted to present this alleged will to the Sumter County probate court pursuant to Alabama Code § 43-2-29(a).

6.       Bessie Horn lied on documents filed in Sumter County, Alabama Probate Court Case Number 6206.

7.       Bessie Horn committed fraud when she filed documents in the Sumter County Probate Court, Alabama Case Number 6206 which she knew were false.

8.       Bessie Horn cannot produce a valid marriage license for her marriage to John Wideman Jr.

9.       If Bessie Horn and John Wideman Jr. were married as Bessie Horn alleges she committed the crime bigamy while married to David Horn, Robert Jones, and/or Jonas Calhoun.

10.       John Wideman Jr. died as a resident of Cuyahoga County in the State of Ohio.

11.       John Wideman Jr. died testate.

12.       John Wideman Jr.'s Last Will and Testament John Wideman Jr. named Adrienne Wheatley as his wife and surviving spouse.

13.       John Wideman Jr. did not die intestate.

14.       Bessie Horn was not named and/or mentioned in John Wideman Jr.'s Last Will and Testament.

15.       Bessie Horn cannot produce a single piece of evidence to establish a legal and/or lawful marriage existed between her and John Wideman Jr.

16.       Adrienne D. Wheatley is the surviving spouse and proper beneficiary under the ERISA Plan which is the subject of this Complaint.

(Doc. 39, at 5-6).

Fed. R. Civ. P. 36(a)(1)(A) permits requests for admissions as to "facts, the application of law to fact, or opinions about either."  7 Moore's Federal Practice § 36.10[8] at 36-26 (3d ed. 2008) summarizes that provision as follows:

Requests for admission may relate to the application of law to fact.  Such requests should not be confused with pure requests for opinions of law, which are not contemplated by the rule.  Nor are requests seeking legal conclusions appropriate

-20-

when proceeding under Rule 36.

Many of the admissions that Defendant Horn allegedly made by failing to respond to Defendant Wheatley's requests consist of legal conclusions regarding the validity of Defendant Horn's and Defendant Wheatley's alleged marriages to Mr. Wideman; one directly addresses which of the defendants is entitled to survivor's benefits under the Plan. These are the central legal issues in the case at bar, not factual issues capable of admission under Rule 36. Because legal conclusions are not contemplated under Rule 36, the court declines to defer to Defendant Horn's purported admissions-by-silence for purposes establishing Defendant Wheatley's claims. Additionally, it is clear based on Defendant Horn's other filings that Defendant Horn disputes the validity of Defendant Wheatley's marriage to Mr. Wideman and argues that she in fact is Mr. Wideman's surviving spouse. Although these assertions do not appear directly in responses to Defendant Wheatley's requests for admissions, this court is not inclined to recommend punishing Defendant Horn with an adverse judgment for failing to respond to the requests for admissions in a timely manner or in the correct format. *See U.S. v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) ("[T]he failure to respond in a timely fashion does not require the court automatically to deem all matters admitted.") (internal citation omitted); *see also Estelle*, 429 U.S. at 106 (A document filed pro se is to be "liberally construed"). Such a punishment would seem to be particularly inappropriate in light of the court's previous determination that it must defer to the Sumter County probate court order under principles of full faith and credit for purposes of deciding who is Mr. Wideman's surviving spouse. *See* Section II.B.1, *supra.*

The remaining purported admissions-by-silence, even if deemed to be admitted, do not establish that Defendant Wheatley is Mr. Wideman's surviving spouse and therefore are insufficient

to establish that Defendant Wheatley is entitled to judgment as a matter of law.  The court notes that some of these purported admissions – such as those addressing whether Mr. Wideman died testate – also amount to legal conclusions.  The admissions concerned with the extent to which Defendant Horn can produce evidence to support her legal claims, while somewhat more in the nature of issues of fact, toe the line of what is contemplated under Rule 36.  Others – such as whether Defendant Horn was named in Mr. Wideman's alleged will – are largely irrelevant to the issue under consideration.  In sum, the court finds that Defendant Horn's purported admissions do not establish that Defendant Wheatley is entitled to summary judgment in her favor.

### 3.  Judicial Notice

Defendant Wheatley also requests in her motion for summary judgment that the court take "judicial notice" of the order issued by the U.S. District Court for the Southern District of Ohio in *Unicare Life & Health Ins. Co. v. Wheatley*, case number C-1-00-324. (Doc. 39, at 11).  The court finds the precise nature of this request to be somewhat unclear.  The court acknowledges that some aspects of *Unicare* are reminiscent of this case – specifically, *Unicare* involved Defendant Wheatley, Defendant Horn, and the proper distribution of proceeds from a life insurance policy included in Mr. Wideman's employee welfare benefit plan.  In that case, the court found controlling Mr. Wideman's designation of Defendant Wheatley as beneficiary and held in favor of Defendant Wheatley on her motion for judgment on the pleadings.  (Doc. 39, Ex. 22).  However, to the extent that Defendant Wheatley's request for judicial notice of *Unicare* amounts to an argument that the court must look exclusively to Mr. Wideman's designation of Defendant Wheatley as his spouse for purposes of the case at bar, the court must reject such an argument.

Normally, the court will look to the Plan documents to determine who is the correct

beneficiary.  Under Section 1104(a) of ERISA, a plan administrator must discharge his or her duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The Sixth Circuit has stated that this section of ERISA "establish[es] a clear mandate that plan administrators follow plan documents in determining the designated beneficiary." *Hendon v. E.I. Dupont De Nemours & Co.*, 145 F.3d 1331, 1998 WL 199824, at *4 (6th Cir. Apr. 13, 1998). Pursuant to these rules, and as the court properly noted in *Unicare*, the designation made by a decedent in plan documents controls the distribution of life insurance proceeds absent an allegation that the documents in question are fraudulent, otherwise unreliable, or the product of undue influence.  (Doc. 39, Ex. 22, at 3).

However, the instant action concerns the proper distribution of *survivor's benefits*, not life insurance proceeds.  Although, as discussed above, ERISA provides that the plan documents generally will control the determination of the beneficiary to a life insurance policy, ERISA also provides that survivor's benefits cannot be paid to a person named in the Plan documents who is not the surviving spouse, unless the surviving spouse has signed a written, notarized consent form authorizing such action. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 n.1 (6th Cir. 2006) (citing 29 U.S.C. § 1055(a), (c)(2); *Boggs v. Boggs*, 520 U.S. 833, 843, 117 S.Ct. 1754 (1997); *Shields v. Reader's Digest Assn.*, 331 F.3d 536, 542 (6th Cir. 2003).  No party has produced evidence of a signed consent form in this case.  Thus, ERISA itself makes it necessary to determine – without reference to the Plan documents – whether Defendant Wheatley or Defendant Horn is the surviving spouse.  Therefore, the court must decline any invitation – to the extent Defendant Wheatley has issued one in requesting "judicial notice" – to end its inquiry at Mr. Wideman's designation of Defendant Wheatley.

### 4. Common Law Marriage

Finally, Defendant Wheatley argues that the court should grant summary judgment in her favor because Defendant Horn cannot prove that she and Mr. Wideman had a valid common law marriage under applicable state law. The court first addresses what law should apply – an issue the parties do not brief directly. The Plan states in the Complaint that "the Plan is governed by Michigan law except to the extent that such law is preempted by ERISA." (Compl., at ¶ 1). Defendant Wheatley cites Ohio law in her motion for summary judgment, but does not address why the application of Ohio law is appropriate. (Doc. 39). Defendant Wheatley references in her filing the validity of common law marriages in Ohio but also cites some Florida case law. (Doc. 47).

Because the Plan contains a choice of law provision, the court first addresses whether that provision is enforceable. For guidance on this question, the court looks to the Restatement. *See Durden*, 448 F.3d at 922-24. Under Section 187 of the Restatement (Second) of Conflict of Laws, a choice of law provision in a contract will govern unless:

(a)    the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b)    application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Under these rules, the court should apply Michigan law unless either subsection (a) or (b) applies, such that the application of either Ohio or Florida law is most appropriate. Subsection (a) clearly does not apply. In the Complaint, the Plan states that "[t]he Plan is administered in, and considered a citizen of, the State of Michigan;" thus, the choice of Michigan law in the Plan is not without a reasonable basis. Subsection (b) applies only if Florida or Ohio has a "materially greater

-24-

interest" in the case than Michigan; the application of Michigan law would be contrary to a "fundamental policy" of Florida or Ohio; and Florida or Ohio law would apply had the there not been a choice of law provision.

Florida clearly does not have a greater interest than Michigan in the instant case, since there is no evidence that Defendant Horn, Defendant Wheatley or Mr. Wideman ever lived in Florida, nor any allegation that Mr. Wideman married either Defendant in Florida.  The remaining contender is Ohio.  Although, as noted above, the Plan is administered in Michigan and Ford Motor Company has its headquarters in Michigan, Ohio arguably has a greater interest in the case than Michigan.  It appears that the alleged marriage between Defendant Horn and Mr. Wideman was contracted – if at all – in Lorain, Ohio, and that Defendant Horn lived with Mr. Wideman at some point in Ohio. Defendant Wheatley also presents evidence that she and Mr. Wideman were married in Ohio and that they lived together in Ohio until he died.

Yet Ohio law should apply only if applying Michigan law would be contrary to a "fundamental policy" of Ohio.  Ultimately, it appears that this is where the point becomes moot.  At issue is whether Defendant Horn and Mr. Wideman had a valid common law marriage that did not end prior to Defendant Wheatley's ceremonial marriage to Mr. Wideman.  Common-law marriages have been prohibited in Michigan since 1957.  *People v. Schmidt*, 228 Mich.App. 463, 466, 579 N.W.2d 431 (Mich. App. 1998).  However, Michigan follows the normal rule that "a marriage valid where it is contracted is valid everywhere."  *Id.* at 466-67 (citing *In re Toth Estate*, 50 Mich.App. 150, 152, 212 N.W.2d 812 (1973)).  Pursuant to this rule, Michigan "will recognize the validity of a common-law marriage contracted in another state that would be valid by the laws of that state." *Id.* at 467.  Ohio recognizes common-law marriages that were established prior to October 10, 1991.

-25-

*See* Ohio Revised Code § 3105(B)(1)-(2). Defendant Horn and Mr. Wideman's common-law marriage was established – if at all – in Lorain, Ohio prior to October 1991. Thus, it ultimately matters little whether the court applies Michigan or Ohio law, because the court must look to Ohio law in any case to determine whether a valid common-law marriage existed between Defendant Horn and Mr. Wideman.

The Supreme Court of Ohio has held that the essential elements of a common-law marriage are: (1) a mutual agreement to marry *in praesenti*; (2) cohabitation as husband and wife; and (3) a holding out – and resulting reputation in the community – as a married couple. *Nestor v. Nestor*, 15 Ohio St.3d 143, 145, 472 N.E.2d 1091 (Ohio 1984). The mutual agreement to marry in praesenti is the "essential element" of the common law marriage. *Id.* at 146. This element may be established by direct evidence or "by way of proof or cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside." *Id.* Ohio courts generally have recognized that valid common law marriages established prior to October 10, 1991 – the date on which common law marriage were statutorily prohibited – remain valid until terminated by death, dissolution, divorce or annulment. *Tabler v. Tabler*, 2007 WL 969421 at *3 (Ohio App. 5th Dist. Mar. 26, 2007) (citing *DeCarlo v. Estate of Maxwell*, 167 Ohio App.3d 131, 854 N.E.2d 230, 233 n. 2 (Ohio App. 9th Dist. 2006); Ohio R.C. § 3105.12(B)(2)).

Additionally, "all the essential elements to a common law marriage must be established by clear and convincing evidence." *Nestor*, 15 Ohio St.3d at 145. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cork v. Bray*, 52 Ohio St.3d 35, 38, 555 N.E.2d 936, 939 (Ohio 1990) (internal citations omitted). Under Sixth Circuit law, a court should

consider a non-moving party's heightened burden of proof in determining whether summary judgment is appropriate. "[W]here the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, he must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (stating that in the "new era" of summary judgment practice, "any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent").

In support of her position that she and Mr. Wideman had a common law marriage, Defendant Horn has submitted what appear to be two pages from Mr. Wideman's paperwork for employment at Ford.  One of these documents is labeled "Ford Hourly Personnel Deduction Authorization."  It lists, among other items, Mr. Wideman's name, address and date of birth, and it indicates that Mr. Wideman is or will be employed at the Lorain Assembly location.  It also contains several different sections in which an employee may authorize payroll deductions for various types of benefits, including U.S. Savings Bonds, a contribution plan, and group life insurance.  In the section pertaining to group life insurance, Mr. Wideman designated Defendant Horn as his beneficiary and indicated that Defendant Horn's relationship to him is "Wife." This document is dated May 18, 1965.  (Doc. 35, Ex. 1).

The other document Defendant Horn has submitted is a page labeled "Hourly Employment Application."  On this document, among other items, are hand-written Mr. Wideman's name and address, the position for which he applied, the highest level of education he attained and his weight

and weight.  Also hand-written on this document is a designation of Defendant Horn as Mr. Wideman's wife and emergency contact.  This form is dated April 1, 1965. (Doc. 35, Ex. 2).

The fact that Mr. Wideman apparently listed Defendant Horn as his wife on his Ford hiring paperwork strongly suggests that he believed that they were married at that time.  However, these forms evidently were completed on May 18, 1965 and April 1, 1965 – dates which clearly precede by several weeks July 5, 1965 – the date on which David Horn died.  Defendant Horn admits that she was married to David Horn before her alleged common law marriage to Mr. Wideman began and that her marriage to David Horn ended with his death.  Since polygamy is prohibited in Ohio, a person cannot establish a common law marriage while he or she is still lawfully married to another person.  *Sulfridge v. Kindle*, 2005 WL 1806482, at *2 n. 7 (Ohio App. 4th Dist. July 28, 2005) (citing *Nyhuis v. Pierce*, 65 Ohio Law Abs. 73, 114 N.E. 75 (Ohio 1952); *State v. Heredia*, 1987 WL 17626 (Ohio App. 8 th Dist. Sep. 24, 1987); *Swain v. Watts*, 1984 WL 4088 (Ohio App 2d Dist. Oct. 30, 1984)).  Because Defendant Horn and Mr. Wideman could not have established a common law marriage prior to July 5, 1965, and because Mr. Wideman evidently completed these forms prior to that date, the evidence that Defendant Horn has submitted is of limited relevance to the inquiry of whether she and Mr. Wideman had a valid common law marriage.

Defendant Wheatley presents various pieces of evidence in support of her claim that Defendant Horn and Mr. Wideman did not have a valid common law marriage.  First, Defendant Wheatley points to a portion of a Reconsideration Determination issued to Defendant Horn by the Social Security Administration.  The document reflects that Defendant Horn represented to the Social Security Administration in applying for widow's benefits that she "entered into a valid common-law relationship with Mr. Wideman on June 1, 1972, and that this relationship ended by

divorce June 1, 1991." (Doc. 39, Ex. 20, at 1).  The document further reads in relevant part:

> John Wideman filed for disability benefits on April 11, 1994.  He listed a marriage to Adrienne Wheeler occurring June 2, 1990, in Cleveland, OH.  He also listed a common-law marriage to Bessie Williams beginning January 2, 1959 and never ended.
>
> Your application for benefits shows that you had a prior marriage to David Horn on June 1, 1959, and that this marriage ended with his death on July 5, 1965.  No proof of the marriage nor of the death of Mr. Horn was submitted.  However, his record was found.  It show[s] he died July 5, 1965.
>
> With your request for reconsideration you provided a letter from Reverend Robert T. Marbury which stated that he had visited with you and John Wideman in your home in April 1982.  Reverend Marbury stated that all indications were that the two of you were husband and wife.  You provided the birth certificate of John Williams Wideman, born March 4, 1968, which shows parent's names of Bessie Mae Williams and John Wideman, Jr. You also . . .[8]

(Doc. 39, Ex. 20, at 2).  Defendant Wheatley cites this document primarily as evidence that Defendant Horn committed Social Security Fraud and that Defendant Horn has lied about the alleged dates of her marriage to Mr. Wideman.  In support of the latter of these two claims, Defendant Wheatley also cites a number of other documents.  These are: (1) a Statement of Marital Relationship that Defendant Horn completed and submitted to the Plan in support of her claim to Mr. Wideman's employee benefits, wherein Defendant Horn stated that she and Mr. Wideman married in 1965; (2) a letter from Defendant Horn's attorney to the Plan regarding her entitlement to widow's benefits indicating that Defendant Horn and Mr. Wideman were married in 1975; and (3) a letter from Defendant Horn to Unicare claiming insurance and other benefits indicating that she was Mr. Wideman's common law wife for other thirty-five years.  (Doc. 39, Ex. 8, Ex. 9, Ex. 21).

Defendant Wheatley also presents evidence regarding Defendant Horn's marriages to other

---

[8]The text of the Reconsideration Determination appears to continue on to a next page; however, neither party has submitted the remaining portions of this document.

men.  This evidence consists of: (1) a marriage certificate indicating that Defendant Horn was married to David Horn on August 5, 1959 and other evidence reflecting that this marriage ended with David Horn's death on July 5, 1965; (2) a judgment from 1974 ordering divorce between Bessie Jones and Robert Jones; (3) a marriage application and license from April and June 1977, respectively, filed by Bessie Jones and Robert Calhoun; and (4) a judgment entry annulling the marriage between Bessie Mae Calhoun and Johnas Davis Calhoun on the basis that Mr. Calhoun was still married to his previous wife by common law.  (Doc. 39, Ex. 16, Ex.17, Ex. 18, Ex. 19).  Interestingly, the marriage application does not list Defendant Horn's marriage to Mr. Wideman as a previous marriage.  *See* doc. 39, Ex. 17.

As noted above, Defendant Horn's evidence is of limited relevance to the court's inquiry regarding whether Defendant Horn and Mr. Wideman had a valid common law marriage; however, the evidence Defendant Wheatley has submitted ultimately demonstrates that she is not entitled to judgment as a matter of law on this issue.  Although Defendant Wheatley points to the Social Security document in part as evidence that Defendant Horn committed Social Security fraud, that issue is not before the court.  The issue before the court is the existence of Defendant Horn's and Mr. Wideman's alleged common law marriage.  The Social Security document indicates that Mr. Wideman listed a common law marriage to Defendant Horn that began in 1959 and never ended. Defendant Wheatley claims that she and Mr. Wideman were married August 12, 1990; the Social Security document indicates that Mr. Wideman listed that marriage as occurring on June 2, 1990. (Doc. 39, Ex. 1, Ex. 2, Ex. 20, at 2).  For the reasons stated above, any alleged marriage between Defendant Horn and Mr. Wideman could not have begun prior to July 5, 1965; however, that fact does not preclude the possibility that their alleged common law marriage became valid on that day

-30-

or at some point between then and the date of Defendant Wheatley's and Mr. Wideman's alleged marriage.  Furthermore, if Defendant Horn and Mr. Wideman at some point established a valid common law marriage, Defendant Horn's alleged marriages to other men, standing alone, would not vitiate that fact because a valid common law marriage will remain valid until terminated by death, dissolution, divorce or annulment.  *Tabler*, 2007 WL 969421 at *3.  Significantly, no party has submitted any evidence that Defendant Horn and Mr. Wideman ever attempted to dissolve their marriage during his lifetime.

Other portions of the Social Security document provide some support for the possibility that Defendant Horn and Mr. Wideman established a valid common law marriage prior to Mr. Wideman's alleged marriage to Defendant Wheatley in 1990.  For instance, the statements that "Reverend Robert T. Marbury . . . visited with you and John Wideman in your home in April 1982," and that "Reverend Marbury stated that all indications were that the two of you were husband and wife" suggest that Defendant Horn and Mr. Wideman were co-habitating in 1982, and that they were holding themselves out as a married couple at that point.  (Doc. 39, Ex. 20, at 2).  The statement regarding "the birth certificate of John Williams Wideman, born March 4, 1968, which shows parent's names of Bessie Mae Williams and John Wideman, Jr." suggests that a child was born of that relationship. (Doc. 39, Ex. 20, at 2).  These statements to some extent support a finding that Defendant Horn and Mr. Wideman established a common law marriage sometime after David Horn's death and prior to Mr. Wideman's alleged marriage to Defendant Wheatley

Furthermore, Defendant Horn apparently has made statements which, if believed, also support a finding that she and Mr. Wideman established a common law marriage.  In the statement of marital relationship submitted to the Plan, Defendant Horn stated that she and Mr. Wideman

began living together in July 1965, and that during their period living together, "he called [her] wife, [she] called him husband." (Doc. 39, Ex. 8, at 1). She also stated that she and Mr. Wideman would introduce each other as husband and wife to friends, relatives, neighbors and business acquaintances. (Doc. 20, Ex. 8, at 2). Defendant Horn further stated that their understanding as to how the relationship could be terminated was "there would have to be a divorce." (Doc. 20, Ex. 8, at 1).

To be sure, some of the assertions in this form, as well as other evidence, tend to negate a finding of a valid common law marriage. For instance, Defendant Horn responded in answer to the form's question, "after both of you learned that the earlier marriage had ended, did you say anything to each other?," "yes," and "we *could marry* or our *common-law relationship* was valid as of 7-4-65." (Doc. 20, Ex. 8, at 4) (emphasis added). On the one hand, Defendant Horn's statement in the alternative that their "common law relationship was valid as of" July 1965 may suggest that she and Mr. Wideman believed they already were married, and that any further "marriage" between them at that point would be merely ceremonial and ineffective legally. On the other hand, Defendant Horn's notion that she and Mr. Wideman "could marry" once David Horn had died may suggest that Defendant Horn and Mr. Wideman believed that they were not yet married, but that they were free to marry legally at that point because Defendant Horn had become single. The record also indicates that Defendant Horn and Mr. Wideman entered into ceremonial marriages with other people. Whether valid or not, these ceremonial marriages indicate that both Defendant Horn and Mr. Wideman were aware of the traditional matrimonial process, and that they valued the process enough to go forward with it in other cases. Thus, the fact that Defendant Horn and Mr. Wideman did not have a ceremonial marriage in this case may raise questions as to whether they truly intended to be married. The record further reflects that at various times Defendant Horn has given various "starting

dates" for her alleged common law marriage to Mr. Wideman – a fact that weighs against Defendant Horn's credibility and the validity of her statements concerning their alleged marriage.

However, neither Defendant Horn's credibility nor the weight to be given any of the evidence is something that can be decided on a motion for summary judgment. "Weighing of the evidence or making credibility determinations are prohibited at summary judgment." *Keweenaw Bay Indian Community v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007).  Clearly, the extent to which Defendant Horn and her various assertions are to be believed affects the ultimate determination of the common law marriage issue.  Defendant Wheatley herself states that "[i]n deciding whether a party has presented clear and convincing evidence of a common law marriage, the weight to be given and the credibility of witnesses is a determination to be made by the trier of fact," and she asserts repeatedly that Defendant Horn's credibility is at issue.  *See* doc. 39, at 8-9, 11.  Based on the above, the court finds that there exist genuine issues of material fact as to whether or not Defendant Horn and Mr. Wideman had a valid common law marriage, and that Defendant Wheatley therefore is not entitled to judgment as a matter of law on this issue.  This finding is especially appropriate in light of the court's determination that the order of the Sumter County probate court is entitled to full faith and credit.[9]

---

[9]Indeed, a determination to the contrary arguably would be tantamount to a finding that the Sumter County probate court order is not entitled to full faith and credit.

## IV.  CONCLUSION

For the foregoing reasons, the court recommends that Defendant Wheatley's motion for summary judgment (doc. 39) and Defendant Bessie Horn's motion for dismissal and the appointment of counsel (doc. 47) be DENIED.

s/ Kenneth S. McHargh

Kenneth S. McHargh
United States Magistrate Judge

Date: June 2, 2010.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.